OPINION
{¶ 1} Antwaun Smith appeals from his conviction for trafficking in cocaine, two counts of possession of criminal tools, possession of cocaine, and tampering with evidence. *Page 2 
 {¶ 2} On January 21, 2007, Detective Craig Polston of the ACE Task Force received a call informing him that a large amount of crack cocaine was found in the residence of a Wendy Northern in Beavercreek, Ohio. Ms. Northern had been transported to Miami Valley Hospital as a result of a possible drug overdose. Detectives Polston and Scott Molnar responded to the hospital to interview Ms. Northern. While at the hospital, Ms. Northern was asked about her drug supplier and if she would cooperate with detectives and place phone calls to her supplier to set up a controlled buy. Ms. Northern agreed to cooperate. Ms. Northern told detectives that her drug supplier, to whom she referred as "Capo" or Antwaun, had been riding as a passenger in a vehicle a few weeks earlier that had been stopped down the street from her home, and was cited for possessing a small amount of marijuana. Polston pulled the information from the traffic stop (including vehicle type, color, make and model) and subsequent arrest and learned the identity of the passenger to be Smith. Polston then showed a BMV photo of Smith to Northern, and she identified Smith as her drug supplier. The detectives took Ms. Northern to the police station to get a written statement and to get her to place some controlled phone calls. Detective Polston asked Ms. Northen to call Capo and request an ounce of crack cocaine. They further asked her to tell Smith to bring the cocaine to her house because she did not have access to transportation. She complied, and the police recorded the conversation. During the phone conversation, Smith agreed to come to Ms. Northern's home to deliver an ounce of crack cocaine. Smith did not show up until much later than expected and while Ms. Northern was being transported back to the Greene County jail, she received a call from Smith telling her that he was in her driveway. This information was immediately relayed *Page 3 
to other police officers on the scene.
 {¶ 3} While in the driveway of the home, Smith and his two passengers were ordered out of the vehicle at gunpoint. Officer Shawn Williams ordered Smith to walk diagonally back toward his voice. When ordered to put his hands up, Smith did not initially comply. (Tr. 208-209.) Officer Williams testified there was "a good two to four second time span" where Smith's hands weren't visible. (Tr. 212.) Smith "took a few shuffle steps back with his hands where [Officer Williams] still could not see [his hands]." (Tr. 214-215.) During this time, there were three to six inches of snow on the ground and it was dark outside. (Tr. 216.) No crack cocaine was found on Smith's person at the time of his arrest. Crack cocaine was ultimately discovered two hours later under the snow in a footprint left by Smith when he exited the vehicle. Smith was arrested at the scene. The officers searched Smith incident to his arrest and recovered $2,500 in cash and a cell phone. Police searched Smith's cell phone prior to booking him into jail, and it revealed that Smith had called Ms. Northern twice, once just before the police arrested him. Police also recovered a crack pipe, some digital scales and a marijuana blunt inside the vehicle Smith had been driving.
 {¶ 4} Prior to trial, Smith moved to suppress the evidence discovered by the police on his cell phone. The trial court overruled Smith's motion upon the authority of United States v. Finley (C.A.5, 2007),477 F.3d 250, certiorari denied (2007), 127 S.Ct. 2065, 167 L.Ed.2d 790, and admitted evidence of the call records and phone numbers retrieved from Smith's phone. Those records demonstrated that the number of the cell phone matched a number provided to the police by Ms. Northern. Furthermore, the cell phone contained Ms. Northern's home phone number and cell phone numbers. *Page 4 
 {¶ 5} This matter proceeded to a trial by jury on March 26, 2007, at the conclusion of which Smith was found guilty of one count of trafficking in cocaine, two counts of possession of criminal tools, one count of possession of cocaine, and one count of tampering with evidence. The court sentenced Smith to a total of 12 years imprisonment, of which eight years is a mandatory term.
 {¶ 6} Smith has filed a timely appeal from this conviction and sentence, assigning the following errors for our review:
 {¶ 7} I. "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY ENTERING A FINDING OF GUILTY TO THE CHARGE OF AGGRAVATED TRAFFICKING IN CRACK COCAINE AND TO THE CHARGE OF TAMPERING WITH EVIDENCE WHEN SAID FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 8} II. "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY ENTERING A FINDING OF GUILTY TO THE CHARGES OF POSSESSION OF AN ILLEGAL SUBSTANCE (CRACK COCAINE) AND TAMPERING WITH EVIDENCE WHICH VERDICT WAS NOT SUPPORTED BY EVIDENCE AND SO IS CONTRARY TO LAW."
 {¶ 9} III. "DUE TO TRIAL COUNSEL'S FAILURE TO OBJECT TO IMPROPER QUESTIONS AND COMMENTS OF THE PROSECUTOR, APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AND THUS WAS DENIED A FAIR TRIAL HEREIN."
 {¶ 10} IV. "COMMENTS BY THE PROSECUTOR BOTH DURING TESTIMONY AND DURING CLOSING ARGUMENT REPRESENTED MISCONDUCT AND SERVED TO DENY APPELLANT DUE PROCESS." *Page 5 
 {¶ 11} V. "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY REFUSING TO SUPPRESS THE USE OF CELL PHONE RECORDS ILLEGALLY SEIZED FROM APPELLANT."
 I {¶ 12} Smith argues his convictions for aggravated trafficking and tampering with evidence are against the manifest weight of the evidence. He contends the State failed to produce evidence that he sold or offered to sell crack cocaine to Wendy Northern. He argues that no one saw him in possession of crack cocaine or tamper with any evidence.
 {¶ 13} We agree with the State that Smith's conviction for aggravated trafficking in cocaine is not against the manifest weight of the evidence. The jury heard the recorded conversation in which Smith agreed to provide the cocaine to Northern. R.C. 2925.03(A)(1) provides that no one shall knowingly sell or offer to sell a controlled substance. Crack cocaine is a controlled substance. Our review of the record demonstrates that Smith offered to sell an ounce of cocaine to Northern. We have listened to the recordings of Ms. Northern's cell phone conversations with Smith held on January 21, 2007. The following statements can be gleaned from those conversations:
 {¶ 14} Northern: "[mumbling]"
 {¶ 15} Smith: "I'm still trying to get a way out there. If I do, what do you want me to do?"
 • * * *Page 6 
 {¶ 16} Northern: "[mumbling]"
 {¶ 17} Smith: "You used to paying, you used to going * * * somebody else, getting it for lower, and I don't have it for that."
• * *
 {¶ 18} Northern: "[mumbling] * * * can I get something?"
 {¶ 19} Smith: "Yep, you know you can without even asking."
 {¶ 20} Northern: "[mumbling]"
 {¶ 21} Smith: "Uh, um, I'm going to try to make it to you."
• * *
 {¶ 22} Northern: "[mumbling]"
 {¶ 23} Smith: "Yeah, yeah, yeah, um, I got it. I'll have it for you. I gotta get a way out, I gotta get a way out there."
 {¶ 24} Northern: "[mumbling]"
 {¶ 25} Smith: "As soon as I get a way, a licensed driver, I'll bring it straight out there to you * * * I'll make sure I'll get it to you. I can get it out there to you today before 5:00."
 {¶ 26} Northern: "[mumbling]"
 {¶ 27} Smith: "I promise. Hey, you know I'm taking a hell of a risk, but I'm a doing this because of you."
• * *
 {¶ 28} Tampering with evidence as provided in R.C. 2921.21(A)(1) states in part that no person knowing that an investigation is in progress shall alter, destroy, conceal or remove anything with purpose to impair its value or availability as evidence in such *Page 7 
investigation. The State presented evidence that shortly after Smith offered to sell cocaine to Northern, he was arrested by the police at Northern's residence. There was circumstantial evidence that Smith dropped the cocaine in the snow before he could be taken into custody. These actions by Smith support his convictions for tampering with evidence and aggravated trafficking. State v. Diana (1976),48 Ohio St.2d 199. The Appellant's first assignment is Overruled.
 II {¶ 29} In his second assignment, Smith argues his conviction for possession of cocaine is based on insufficient evidence. Insufficient evidence is evidence which would raise a reasonable doubt of the defendant's guilt in the average mind of a juror. State v. Jenks (1991),61 Ohio St.3d 259. The State presented circumstantial evidence that Smith dropped the cocaine, recovered in the snow, in the area where he exited his vehicle. It was Smith who, after all, offered to sell the cocaine to Northern and he was about to deliver it to Northern when he was apprehended. Smith's conviction for possession of cocaine was based on sufficient evidence. The second assignment of error is likewise Overruled.
 III {¶ 30} In his third assignment, Smith contends his trial counsel was ineffective in failing to object to certain testimony presented by the State. Specifically, he contends his trial counsel should have objected to Wendy Northern's testimony that she had spent $70,000 on drugs and that drugs had ruined her life. The State argues that this *Page 8 
testimony was not improper because the prosecutor was trying to establish Ms. Northern's relationship with Smith. We agree with Smith that the testimony was not particularly relevant. Ms. Northern testified she spent approximately $70,000 in the past year on crack cocaine, but purchased crack cocaine for three months before she met Smith. In any event, the jury undoubtedly knew that drug addicts spend enormous amounts of money to feed their addiction.
 {¶ 31} Smith contends his trial counsel was also ineffective for not objecting to Detective Polston's testimony that Northern told him that Smith had been stopped in her neighborhood earlier and had been arrested for possession of marijuana. The State argues that this testimony was admissible under Evid. R. 404(B) to show the defendant's identity. Polston testified he used the information for the marijuana arrest to show a BMV photograph of Smith to Northern to identify him as her drug supplier. We agree with Smith that this testimony was improper, but the jury was immediately informed that Smith's arrest for possession of marijuana should have no bearing on their decision.
 {¶ 32} Smith argues his trial counsel should have objected to the unflattering "thug-like" photograph taken of him when he was arrested, and the testimony that police recovered a holster for a gun, digital scales, a crack pipe, and a marijuana blunt in the vehicle. Smith contends that since he did not own the vehicle he was driving, some of the items found in the vehicle should not have been the subject of the officer's testimony. The State argues that the outcome of the trial would not have been different had the items found in the car Smith was driving not been mentioned. We agree. The photograph taken of the defendant at the time of his arrest was relevant however unflattering it might have been. *Page 9 
 {¶ 33} Finally, Smith contends his trial counsel should have objected to the prosecutor's statements in the rebuttal argument wherein he stated, "you have undoubtedly seen enough shows to know that if the police had done something, violation of Mr. Smith's rights, you wouldn't even know about the evidence." (Tr. 464.) The prosecutor was undoubtedly referring to defense counsel's argument that the police did not have a search warrant or consent from Smith as authority to search his cell phone. The prosecutor's response was not improper. Smith has failed to demonstrate that his trial counsel's performance fell below an objective standard of reasonableness or that, if he did err, the outcome of the trial would have been different but for those errors in judgment.Strickland v. Washington (1984), 466 U.S. 668. The Appellant's third assignment is also Overruled.
 IV {¶ 34} In his fourth assignment, Smith argues that the prosecutor engaged in misconduct in making certain remarks during the trial. Specifically, he contends the prosecutor bolstered the credibility of Ms. Northern by commenting "touche" when after Ms. Northern refused to identify Smith in the courtroom, she told the prosecutor she identified his voice on the audiotape and questioned why the prosecutor asked her to again identify Smith as her drug supplier. The prosecutor was merely commenting that Ms. Northern was correct in pointing out the question by the prosecutor was unnecessary.
 {¶ 35} Next, Smith complains of the prosecutor's comment in final argument "is it beyond the realm of possibility that the defendant brought crack cocaine to a crack cocaine sale?" The State argues that the prosecutor was merely pointing out that *Page 10 
Smith's presence at Ms. Northern's house was not happenstance, but in response to her request that he sell her the cocaine. We agree the remark was not improper. The fourth assignment of error is Overruled.
 V {¶ 36} In his fifth assignment, Smith argues the trial court erred in refusing to suppress the evidence found on his cell phone. Specifically, Smith asserts that the police search of his cell phone was unreasonable because the police had ample opportunity to obtain a search warrant for the contents of his cell phone.
 {¶ 37} The trial court overruled Smith's motion upon the authority ofUnited States v. Finley (C.A.5, 2007), 477 F.3d 250, certiorari denied (2007), 127 S.Ct. 2065, 167 L.Ed.2d 790. In Finley, the Fifth Circuit Court of Appeals upheld the warrantless search of the defendant's cell phone on facts that closely resemble those in the present matter. The police in Finley used a cooperating source to set up a drug buy. The defendant drove the seller, Mark Brown, to the appointed location, and the drug sale was completed with the seller who was seated in the front passenger seat. Finley drove away and was stopped by police who recovered drugs with Finley's name on a pill bottle and marked money used to purchase the drugs. Finley and Brown were both arrested, and Finley's cell phone was seized. Finley and Brown were then transported to Brown's residence where police were conducting a search pursuant to a warrant. At that location, police searched Finley's cell phone call records and messages, along with several of the text messages, which referred to narcotics trafficking.
 {¶ 38} The court of appeals found the trial court properly denied Finley's motion to suppress the cell phone evidence. The court wrote as follows: *Page 11 
 {¶ 39} "Although Finley has standing to challenge the retrieval of the call records and text messages from his cell phone, we conclude that the search was lawful. It is well settled that `in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.' United States v.Robinson, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Police officers are not constrained to search only for weapons or instruments of escape on the arrestee's person; they may also, without any additional justification, look for evidence of the arrestee's crime on his person in order to preserve it for use at trial. See id. at 233-34,94 S.Ct. 467. The permissible scope of a search incident to a lawful arrest extends to containers found on the arrestee's person. UnitedStates v. Johnson, 846 F.2d 279, 282 (5th Cir. 1988) (per curiam); see, also, New York v. Belton, 453 U.S. 454, 460-61,101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (holding that police may search containers, whether open or closed, located within arrestee's reach);Robinson, 414 U.S. at 223-24, 94 S.Ct. 467 (upholding search of closed cigarette package on arrestee's person).
 {¶ 40} "Finley concedes that the officers' post-arrest seizure of his cell phone from his pocket was lawful, but he argues that, since a cell phone is analogous to a closed container, the police had no authority to examine the phone's contents without a warrant. He relies on Walter v.United States, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980), for this proposition. Walter, however, is inapposite because in that case no exception to the warrant requirement applied, see id. at 657,100 S.Ct. 2395, whereas here no warrant was required since the search was conducted pursuant to a valid custodial arrest, see Robinson,414 U.S. at 235, 94 S.Ct. 467. Special Agent Cook was *Page 12 
therefore permitted to search Finley's cell phone pursuant to his arrest. Cf. United States v. Ortiz, 84 F.3d 977, 984 (7th Cir. 1996) (upholding retrieval of information from pager as search incident to arrest). The district court correctly denied Finley's motion to suppress the call records and text messages retrieved from his cell phone." Id. at 259-60.
 {¶ 41} In a footnote, the court stated that the fact that the police transported Finley to Brown's residence did not alter its conclusion, citing United States v. Edwards (1974), 415 U.S. 800, 803,94 S.Ct. 1234, 39 L.Ed.2d 771. Id. at 260, fn. 6. The court noted that searches and seizures that could be made on the spot at the time of arrest may legally be concluded later when the accused arrives at the place of detention as a search incident to arrest. Consequently, the court found the search of Finley was still substantially contemporaneous with his arrest. Id.
 {¶ 42} At least one court has differed from the view expressed inFinley. In United States v. Park (N.D.Cal. 2007), No. CR 05-375 SI,2007 WL 1521573, the court held the warrantless searches of cellular phones lawfully seized from drug defendants at the time of their arrests, conducted an hour and one-half later, were not reasonable as incident to the defendants' arrests. There, the court found, unlike theFinley court, that for purposes of Fourth Amendment analysis, cellular phones should be considered "possessions within an arrestee's immediate control" and not part of "the person." Id. at *9. The court noted that this was so because modern cellular phones have the capacity to store immense amounts of private information. Id.
 {¶ 43} In reaching this conclusion, the court relied on United Statesv. Chadwick (1977), 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538, abrogated on other grounds by *Page 13 California v. Acevedo (1982), 500 U.S. 565, 111 S.Ct. 1982,114 L.Ed.2d 619. The Chadwick court suppressed the search of a locked footlocker seized by police officers from the trunk of the defendants' vehicle yet not searched until approximately one hour later at the Federal Building in Boston. Finding the search impermissible under the Fourth Amendment, the Court provided the following:
 {¶ 44} "[Searches incident to custodial arrests] may be conducted without a warrant, and they may also be made whether or not there is probable cause to believe that the person arrested may have a weapon or is about to destroy evidence. The potential dangers lurking in all custodial arrests make warrantless searches of items within the `immediate control' area reasonable without requiring the arresting officer to calculate the probability that weapons or destructible evidence may be involved. United States v. Robinson, 414 U.S. 218,94 S.Ct. 467, 38 L.Ed.2d 427 (1973); Terry v. Ohio, [392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)]. However, warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the `search is remote in time or place from the arrest,' Preston v. United States, [376 U.S. 364, 367,84 S.Ct. 881, 11 L.Ed.2d 777 (1964)], or no exigency exists. Once law enforcement officers have reduced luggage or other personal property not immediatelyassociated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest." (Emphasis added.) Id. at 15.
 {¶ 45} The Park court noted that the decision in Chadwick differed significantly from the Supreme Court's earlier decision inEdwards, where it initially recognized an *Page 14 
exception to the requirement that a search incident to an arrest be conducted at approximately the same time as the arrest. InEdwards, the Court found that the delayed search of the defendant's clothing "was and is a normal incident of a custodial arrest, and reasonable delay in effectuating it does not change the fact that [the defendant] was no more imposed upon than he could have been at the time and place of the arrest or immediately upon arrival at the place of detention." Edwards, 415 U.S. at 805. At their core, Edwards andChadwick created a distinction between "searches of the person" and "searches of possessions within an arrestee's control." The court inPark found "searches of the person" such as those in Robinson andEdwards distinguishable from the search of the defendant's cell phone in that case, providing that cell phones were more like warrantless searches of a purse, suitcase or briefcase under the exclusive control of the police where the arrestee can no longer gain access to the property to destroy evidence. Park at *7, citing United States v.Monclavo-Cruz (C.A.9, 1981), 662 F.2d 1285, 1291 ("[Possessions within an arrestee's immediate control have fourth amendment protection at the station house unless the possession can be characterized as an element of the clothing, or another exception to the fourth amendment requirements applies").
 {¶ 46} Although we acknowledge the concern that the court inPark places on the enormous amount of private information subject to a search of cell phones, we are inclined to agree with the trial court and find that Finley controls the instant matter. Here, the trial court denied Smith's suppression motion on the basis that police officers may search, without additional justification, "for evidence of the arrestee's crime on his person in order to preserve it for use at trial." (Judgment Entry at 6.) The record *Page 15 
indicates that the police officers obtained Smith's cell phone immediately from his person. However, it is unclear whether they searched the phone's call records and numbers at the scene of the arrest or later at the station when they were securing the evidence. The trial court's decision, to which we agree, implies that both times are substantially contemporaneous to the arrest. This reasoning encompasses the holdings in both Finley and Edwards regarding a search incident to arrest of items found on one's person. See Finley, 477 F.3d at 260 ("In general, as long as the administrative process incident to the arrest and custody have not been completed, a search of effects seized from the defendant's person is still incident to the defendant's arrest."). See, also, Edwards, 415 U.S. at 803 ("[S]earches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention.").
 {¶ 47} Moreover, we note that the trial court permitted only evidence pertaining to the cell phone's call record and numbers matching those supplied by the informant, Ms. Northern. It granted, however, Smith's motion to suppress incriminating photos also retrieved by the officers from the phone. In doing so, the court appropriately admitted only that evidence which the officers had a reasonable suspicion was on Smith's person at the time of his arrest. Thus, the broader privacy concerns addressed in Park were not implicated here. See United States v.Valdez (E.D.Wis. Feb. 8, 2008), No. 06-CR-336, 2008 WL 360548.
 {¶ 48} Accordingly, we find that the court did not err in refusing to suppress evidence taken from Smith's cell phone that was seized from his person incident to his arrest. Appellant's fifth assignment of error is Overruled. *Page 16 
 {¶ 49} The Judgment of the trial court is Affirmed.