NOS. 12-08-00074-CR


 12-08-00075-CR


IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


JERRY GLYNN LEMONS,
§
 APPEAL FROM THE SEVENTH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS

 

OPINION


 Jerry Glynn Lemons appeals his convictions for indecency with a child and possession of
child pornography, for which he was sentenced to imprisonment for fourteen years for each offense.
In one issue, Appellant argues that the trial court erred in refusing to suppress photographic evidence 
seized from his cellular telephone. We affirm.


Background

 Appellant was charged by separate indictments with one count of indecency with a child and
one count of possession of child pornography. Appellant pleaded "not guilty," and the matter
proceeded to a bench trial.

 At trial, the State sought to introduce Exhibit 3, a photograph depicting a nude image of
fourteen year old N.H. that Tyler Police Department Officers John Thornhill and Kyle Rhodes
discovered stored on Appellant's cellular telephone. Appellant objected to the admission of
Exhibit 3. Thereafter, the trial court conducted a hearing to consider whether the exhibit should be
suppressed based on Appellant's contention that the officers exceeded the scope of his consent in
the conduct of their search of his cellular telephone. Upon consideration of the issue, the trial court
declined to suppress Exhibit 3 and admitted it into evidence. 

 Ultimately, the trial court found Appellant "guilty" as charged on each offense. Following
a hearing on punishment, the trial court sentenced Appellant to imprisonment for fourteen years for
each offense. This appeal followed.


Motion to Suppress

 In his sole issue, Appellant argues that the trial court erred in refusing to suppress Exhibit 3. 
Specifically, Appellant argues that Thornhill exceeded the scope of Appellant's consent when he
accessed Appellant's photos on his cellular telephone.

Standard of Review

 We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard
of review. See Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage
in our own factual review. See Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
v. State, 118 S.W.3d 857, 861 (Tex. App.-Fort Worth 2003, no pet.). The trial judge is the sole trier
of fact and judge of the credibility of the witnesses and the weight to be given their testimony. 
Wiede v. State, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007); State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000), modified on other grounds, State v. Cullen, 195 S.W.3d 696 (Tex. Crim.
App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions
of historical fact, even if the trial court's determination of those facts was not based on an evaluation
of credibility and demeanor, and (2) application of law to fact questions that turn on an evaluation
of credibility and demeanor. See Amador, 221 S.W.3d at 673; Montanez v. State, 195 S.W.3d 101,
108-09 (Tex. Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002). 
But when application of law to fact questions do not turn on the credibility and demeanor of the
witnesses, we review the trial court's rulings on those questions de novo. See Amador, 221 S.W.3d
at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68 S.W.3d at
652-53.

 In other words, when reviewing the trial court's ruling on a motion to suppress, we must view
the evidence in the light most favorable to the trial court's ruling. See Wiede, 214 S.W.3d at 24;
State v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the record is silent on the
reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely
requested findings and conclusions from the trial court, we imply the necessary fact findings that
would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial
court's ruling, supports those findings. See Kelly, 204 S.W.3d at 819; see Amador, 221 S.W.3d at
673; Wiede, 214 S.W.3d at 25. We then review de novo the trial court's legal ruling unless the
implied fact findings supported by the record are also dispositive of the legal ruling. See Kelly, 204
S.W.3d at 819.

Scope of Consent

 Consent to search is one of the well established exceptions to the constitutional requirements
of both a warrant and probable cause. Carmouche v. State, 10 S.W.3d 323, 331 (Tex. Crim. App.
2000) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44, 36 L. Ed.
2d 854 (1973)). To be valid, a consent to search must be positive and unequivocal and must not be
the product of duress or coercion, either express or implied. See Allridge v. State, 850 S.W.2d 471,
493 (Tex. Crim. App. 1991). The trial court must look at the totality of the circumstances
surrounding the statement of consent in order to determine whether consent was given voluntarily. 
See Reasor v. State, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000). The federal constitution requires
the state to prove voluntary consent by a preponderance of the evidence, but the Texas Constitution
requires proof by clear and convincing evidence. See Carmouche, 10 S.W.3d at 331.

 Yet, even when an individual voluntarily consents to a search, an officer's authority to
perform the search is not without limit. See May v. State, 582 S.W.2d 848, 851 (Tex. Crim. App.
[Panel Op.] 1979). The extent of the search is limited to the scope of the consent given. See Florida
v. Jimeno, 500 U.S. 248, 251, 111 S. Ct. 1801, 1803-04, 114 L. Ed. 2d 297 (1991); May, 582
S.W.2d at 851. The standard for measuring the scope of a suspect's consent under the Fourth
Amendment is that of objective reasonableness, i.e., what the typical reasonable person would have
understood from the exchange between the officer and the suspect. See Jimeno, 500 U.S. at 251,
111 S. Ct. at 1803-04; Simpson v. State, 29 S.W.3d 324, 330 (Tex. App.-Houston [14th Dist.] 2000,
pet. ref'd). The question is not to be determined on the basis of the subjective intentions of the
consenting party or the subjective interpretation of the searching officer. United States v.
Mendoza-Gonzalez, 318 F.3d 663, 667 (5th Cir.), cert. denied, 538 U.S. 1049, 123 S. Ct. 2114, 155
L. Ed. 2d 1091 (2003).

 "If the consent to search is entirely open ended, a reasonable person would have no cause to
believe that the search will be limited in some way." Id. at 670 (quoting United States v. Snow, 44
F.3d 133, 134-35 (2d Cir. 1995)). Thus, for example, when an officer specifically asks a suspect
if he can search a vehicle for illegal contraband, and the suspect answers affirmatively, a reasonable
person would construe the consent to extend to any area of the vehicle in which such objects could
be concealed. See, e.g., Simpson, 29 S.W.3d at 330. Moreover, if an officer makes a general request
to search and the individual consents, knowing that there are unlocked containers in the car, the
individual should expressly limit his consent to the vehicle but not the containers or, at the very least,
object when the officer begins to open the container. See Mendoza-Gonzalez, 318 F.3d at 667. The
state has the burden of showing that the search was conducted within the scope of the consent
received. See Malone v. State, 163 S.W.3d 785, 798 n.6 (Tex. App.-Texarkana 2005, pet. ref'd).

Scope of Consent to Search Cellular Telephone 

 In the case at hand, N.H.'s father called the police after having been informed that N.H. was
observed lying in Appellant's bed. Rhodes and Thornhill went to Appellant's place of employment
to interview him. During the course of the interview, the officers questioned Appellant concerning
whether he had been calling N.H. on the telephone. Shortly thereafter, Thornhill asked Appellant
if he could see Appellant's cellular telephone. Appellant responded by handing his cellular
telephone to Thornhill. After Thornhill examined the calling information on the telephone, he
pressed the "camera" button. As a result, he observed several photos stored in the phone's memory,
one of which was a nude picture of fourteen year old N.H. After Thornhill observed this photograph,
Appellant stated that he had taken the picture of N.H. at the Twelve Oaks Hotel in Tyler, Texas. (1)

 Appellant cites United States v. Finley, 477 F.3d 250 (5th Cir. 2007) and United States v.
Park, No. CR 05-375 SI, 2007 WL 1521573 (N.D. Cal. 2007), both of which pertain to the seizure
of information contained on cellular telephones. In Finley, the court generally acknowledged that
a person has a privacy interest in information contained in a cellular telephone. See Finley, 477 F.3d
at 259-60. In Park, the government conceded that the defendants had a reasonable expectation of
privacy in their cellular phones. See Park, 2007 WL 1521573, at *5 n.3. However, neither court
considered the issue of scope of consent. As a result, neither Finley nor Park is germane to the issue
at hand.

 We have reviewed the record as it pertains to Appellant's giving consent. The epicenter of
our inquiry is Thornhill's request to Appellant that he be allowed to examine Appellant's cellular
telephone and Appellant's nonverbal response of simply handing his cellular telephone to Thornhill. 
There is no indication from the record that would allow a reasonable person to conclude that
Appellant intended to shape the confines of his forthcoming consent by the subject matter of the
conversation between him and Thornhill in the moments preceding Appellant's relinquishment of
his cellular telephone to Thornhill. Instead, it is reasonable to conclude that Appellant's surrender
to Thornhill of his cellular telephone in response to Thornhill's open ended request implied
Appellant's grant of equally unbridled consent for Thornhill to examine the phone and the
information contained therein. See, e.g., Cannon v. State, 29 F.3d 472, 477 (2d Cir.1994) (holding
that defendant's answer to "go ahead" and look in car justified search of trunk). Moreover,
Appellant's failure to object to Thornhill's continued search of his phone after bestowing on him
such general consent to search was an indication that Thornhill's search was within the scope of
Appellant's initial consent. See id. 

 In sum, the State was required to prove by clear and convincing evidence that Appellant's
consent to a search of his cellular telephone was unequivocal; in other words, that Appellant's
expression of consent was, viewed in the totality of the circumstances, capable of only one
reasonable interpretation. See Reasor, 12 S.W.3d at 818; Allridge, 850 S.W.2d at 493. Having
applied a deferential standard of review to the trial court's determination of historical facts, we
conclude that a reasonable person could have interpreted Appellant's handing his cellular telephone
to Thornhill in response to Thornhill's open ended request as an unlimited consent to examine the
information contained therein. See Mendoza-Gonzalez, 318 F.3d at 667. Therefore, we hold that
the trial court acted within its discretion by finding that the State proved by clear and convincing
evidence that Thornhill's search of Appellant's cellular telephone was within the scope of
Appellant's consent. Appellant's sole issue is overruled.


Disposition

 Having overruled Appellant's sole issue, we affirm the trial court's judgment.

 

 SAM GRIFFITH 

 Justice




Opinion delivered May 13, 2009.

Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.





























(PUBLISH)
1. N.H. confirmed at trial that the photograph depicted her and was taken at the hotel.