WOLF, J.
 

 Appellant challenges his convictions for armed robbery while in actual possession of a firearm and possession of a firearm by a convicted felon. He raises one issue on appeal: whether the trial court erred in denying his motion to suppress photographs discovered on his cell phone by the arresting officer incident to his arrest.
 

 In the instant case, there is nothing in particular about the crime for which appellant was ai'rested nor any information about this case which would have led the officer reasonably to believe the cell phone contained evidence related to the crime for which appellant was being arrested. We are, however, constrained to affirm the denial of the motion to suppress based on article I, section 12 of the Florida Constitution, which mandates we follow United States Supreme Court precedent in the area of search and seizure. Therefore, we are bound by the Supreme Court’s decision of
 
 United States v. Robinson,
 
 414 U.S. 218, 234, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), in which the Court held containers found upon a person incident to arrest may be searched without “additional justification.” We are not unmindful, however, of the unique qualities of a cell phone which, like a computer, may contain a large amount of sensitive personal information. We, therefore, also certify a question of great public importance concerning whether the general rules announced in
 
 Robinson,
 
 414 U.S. 218, 94 S.Ct. 467, regarding searches incident to arrest are applicable to information contained on a cell phone held on an arrestee’s person.
 

 
 *449
 
 Here, prior to trial, the State indicated it would attempt to introduce photographs discovered on appellant’s cell phone by the arresting officer at the time of his arrest. The State argued the photographs were legally obtained at the time of appellant’s arrest, asserting searches incident to lawful arrest were constitutionally permissible and reasonable in order to disarm an ar-restee and to preserve evidence on the arrestee’s person. Appellant argued the search of the phone was invalid. He argued he had a reasonable expectation of privacy in the information stored on his phone, and the only case law supporting the search of a cell phone as a valid search incident to arrest involved drug-related offenses because phones are often used as an instrumentality in such crimes.
 

 The trial court found the State was entitled to view the contents of the phone because the cell phone was legally confiscated at the time of appellant’s arrest and was still in the possession of the State. The trial court analogized this case to finding a locked box on an arrestee’s person or in an arrestee’s car at the time of the arrest, which the State would be permitted to open.
 

 Appellant subsequently filed a written motion to suppress, renewing his argument that the warrantless search of his phone and seizure of the photographs constituted a Fourth Amendment violation. The court conducted a hearing at which the parties reiterated their prior arguments. Additionally, appellant represented that he took the arresting officer’s deposition, and he stated he looked at appellant’s phone “to see if he took any pictures” that would “relate to the crime” because he “knew people sometimes do that.”
 

 The trial court again found the photographs were admissible, relying on
 
 United States v. Finley,
 
 477 F.3d 250 (5th Cir. 2007), in which a federal court upheld the search of a defendant’s cell phone seized incident to his arrest. It also relied on
 
 New York v. Belton,
 
 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), in which the United States Supreme Court found police were permitted to open containers found in the passenger compartment of an arrestee’s automobile, and analogized the cell phone to a closed container.
 

 During the trial, the arresting officer testified he “looked in the phone for two reasons. One, to see if it was the same one he had been calling me from, and to see if, in fact, did he have any pictures or anything that might be evidence to the crime.” He testified he “found several photos in the phone, photos of [appellant] holding large amounts of cash, there was a gun, jewelry, stuff like that.” The photographs were admitted into evidence at trial. The robbery victim identified appellant in the cell phone photographs and testified the money in the photographs was folded and secured in the same way as the money taken during the robbery. He further testified the pictures depicted a gun that was silver and black, as was the gun used during the robbery.
 

 A discussion of the general law on searches incident to arrest and searches of cell phones is necessary for meaningful analysis of this issue.
 

 a. Search and Seizure Incident to Arrest
 
 — General
 
 Precedent
 

 In
 
 Chimel v. California,
 
 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Supreme Court defined an exception to the Fourth Amendment warrant requirement for searches conducted incident to arrest. The
 
 Chimel
 
 court reasoned pursuant to this exception:
 

 When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any
 
 *450
 
 weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer’s safety-might well be endangered, and the arrest itself frustrated. In addition, it is entirely
 
 reasonable for the arresting officer to search for and seize any evidence
 
 on the arrestee’s person in order
 
 to prevent its concealment or destruction.
 
 And the area into which an arres-tee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested.
 
 There is ample justification, therefore, for a search of the amstee’s person and the area ‘within his immediate control’-construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.
 

 Id.
 
 at 763, 89 S.Ct. 2034 (emphasis added). The
 
 Chimel
 
 court found this exception to the warrant requirement did not, however, extend into the arrestee’s entire house, or concealed areas in the room where the arrestee was arrested, because these were not areas into which the arrestee might reach.
 
 Id.
 
 Therefore, the Supreme Court found, officers’ seizure of evidence during a search of the entirety of Chimel’s home incident to his arrest, including drawers in his master bedroom, violated the Fourth Amendment.
 
 Id.
 

 Subsequently in
 
 Robinson,
 
 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427, the Supreme Court found the scope of a search incident to arrest included searching for and inspecting the contents of personal effects found on an arrestee’s person, even if it was not likely the arrestee would have a weapon or evidence related to the crime. In
 
 Robinson,
 
 an officer arrested the defendant for operating a motor vehicle with a revoked license and conducted a pat-down search.
 
 Id.
 
 at 220-23, 94 S.Ct. 467. The officer found a “crumpled up cigarette package” on his person that the officer opened and found contained heroin.
 
 Id.
 
 at 223, 94 S.Ct. 467. The Supreme Court concluded, “[h]aving in the course of a lawful search come upon the crumpled package of cigarettes, [the officer] was entitled to inspect it; and when his inspection revealed the heroin capsules, he was entitled to seize them.”
 
 Id.
 
 at 236, 94 S.Ct. 467. The Court reiterated, “[t]he justification or reason for the authority to search incident to a lawful arrest rests quite as much on the need to disarm the suspect in order to take him into custody as it does on the need to
 
 preserve evidence on his person for later use at trial.” Id.
 
 at 234, 94 S.Ct. 467 (emphasis added).
 

 The Court rejected the defendant’s argument that the officer should not have been permitted to conduct a full search because it was not likely someone arrested for driving with a license revoked would have a weapon or evidence of that crime on his person.
 
 Id.
 
 at 234-35, 94 S.Ct. 467. The
 
 Robinson
 
 court reasoned,
 

 ...
 
 our more fundamental disagreement with the Court of Appeals arises from its suggestion that there must be litigated in each case the issue of whether or not there was present one of the reasons supporting the authority for a search of the person incident to a lawful arrest.
 
 We do not think the long line of authorities of this Court dating back to
 
 Weeks,
 
 or what we can glean from the history of practice in this country and in England, requires such a case-by-case adjudication. A police officer’s determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick ad hoc judgment which the Fourth Amendment does not require to be broken down in
 
 *451
 
 each instance into an analysis of each step in the search.
 
 The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found
 
 upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful,
 
 a search incident to the arrest requires no additional justification.
 
 It is the fact of the lawful arrest which establishes the authority to search, and
 
 we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a ‘reasonable’ search under that Amendment.
 

 Id.
 
 at 235, 94 S.Ct. 467 (emphasis added).
 

 A few years later in
 
 Belton,
 
 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768, the Supreme Court extended this incident-to-arrest warrant exception to the search of vehicles, finding the lawful search justifies the infringement of any privacy interests. The Court found that where an officer arrests the occupant of a vehicle, the officer “may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile.”
 
 Id.
 
 at 460, 101 S.Ct. 2860. The Court reasoned, “articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, if not inevitably, within the area into which an arrestee might reach.”
 
 Id.
 
 (citation omitted). The Court further reasoned, “[i]t follows from this conclusion that the police may examine the contents of any container found within the passenger compartment, for if the passenger compartment is within the reach of the arrestee, so also will containers in it be within his reach.”
 
 Id.
 
 The Court defined “container” as “any object capable of holding another object,” including “luggage, boxes, bags, clothing, and the like.”
 
 Id.
 
 at 461 n. 4, 101 S.Ct. 2860. The Court found, “[s]uch a container may, of course, be searched whether it is open or closed, since the justification for the search is
 
 not that the arrestee has no privacy interest
 
 in the container, but that the
 
 lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have.” Id.
 
 at 461, 101 S.Ct. 2860 (emphasis added).
 

 The Court conceded:
 

 It is true, of course, that
 
 these containers mil sometimes be such that they could hold neither a weapon nor evidence
 
 of the criminal conduct for which the suspect was arrested. However, in
 
 United States v. Robinson,
 
 the Court rejected the argument that such a container-there a “crumpled up cigarette package”-located during a search of Robinson incident to his arrest could not be searched ...
 

 Id.
 
 at 461, 101 S.Ct. 2860 (emphasis added). The
 
 Belton
 
 court upheld the search of a vehicle that revealed cocaine in the pocket of a jacket inside the car.
 
 Id.
 
 at 461-63, 101 S.Ct. 2860.
 

 However, recently in
 
 Arizona v. Gant,
 
 - U.S. -, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), the Supreme Court limited the application of
 
 Belton
 
 and
 
 Chimel
 
 with regards to searching a vehicle. The Court found that following
 
 Belton,
 
 the prevailing interpretation by lower courts was to read
 
 Belton
 
 “as authorizing a vehicle search incident to every recent occupant’s arrest.”
 
 Id.
 
 at 1719. The Court found, “we reject this reading of
 
 Belton
 
 and hold that the
 
 Chimel
 
 rationale authorizes police to search a vehicle incident to a recent occupant’s arrest only when the arrestee is
 
 *452
 

 unsecured
 
 and
 
 within reaching distance
 
 of the passenger compartment at the time of the search.”
 
 Id.
 
 (emphasis added). The
 
 Gant
 
 court distinguished in
 
 Belton,
 
 the officer was unable to secure the four arres-tees who had been passengers in the vehicle because he was alone and had only one set of handcuffs.
 
 Id.
 

 The Court further found, “[although it does not follow from
 
 Chimel,
 
 we also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is ‘reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.’ ”
 
 Id.
 
 (quoting
 
 Thornton v. U.S.,
 
 541 U.S. 615, 632, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004)). The Court distinguished, “[i]n many cases, where a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence.”
 
 Id.
 
 (citing
 
 Knowles v. Iowa,
 
 525 U.S. 113, 118, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998)). In contrast, “in others, including
 
 Belton
 
 and Thornton, the offense of arrest will supply a basis for searching the passenger compartment of an arrestee’s vehicle and any containers therein.”
 
 Id.
 

 In
 
 Gant,
 
 the defendant was arrested for driving with a suspended license, and after he was handcuffed and locked in a patrol car, police searched his car and discovered cocaine.
 
 Id.
 
 at 1714. The Supreme Court found it was not reasonable to believe evidence of the crime of driving with a suspended license would be found in the car, and Gant was secured; therefore, the search of his car was in violation of the Fourth Amendment.
 
 Id.
 
 at 1719, 1723-24.
 

 While appellant relies heavily on
 
 Gant
 
 for the proposition that the police now need reasonable grounds to search closed containers (analogizing a cell phone to a car), we find it inapplicable to the present situation where the item that was searched was found on appellant’s immediate person.
 

 Also informative is the Florida supreme court’s decision in
 
 Jenkins v. State,
 
 978 So.2d 116, 125-126 (Fla.2008). In
 
 Jenkins,
 
 the Florida supreme court recognized that a search incident to arrest is an exception to the warrant requirement of the Fourth Amendment, but found, “[njonetheless, a search incident to arrest is still subject to a standard of reasonableness.”
 
 Id.
 
 at 125 (citing
 
 Illinois v. Lafayette,
 
 462 U.S. 640, 646, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983)). The court applied the rationale of a United States Supreme Court opinion discussing the Fourth Amendment generally:
 

 The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.
 

 Jenkins,
 
 978 So.2d at 126 (quoting
 
 Bell v. Wolfish,
 
 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)) (finding body cavity searches of inmates were reasonable considering the balance of legitimate security interests against inmates’ privacy interests). In
 
 Jenkins,
 
 the Florida supreme court found the scope and manner of a search incident to arrest for drug activity was reasonable, during which officers pulled the defendant’s boxer shorts away from his body and discovered cocaine in a plastic baggie, reasoning the defendant was not exposed and the officer did not touch his body.
 
 Jenkins,
 
 978 So.2d at 126-27.
 

 While we find the balancing test in
 
 Jenkins
 
 an appealing method for evaluating
 
 *453
 
 the legitimacy of a search of this type, the search in that case was upheld and the test appears to have been utilized only in reference to limiting the extent to which an arrestee’s body may be searched while in, public.
 

 b. Search and Seizure Incident to Arrest
 
 — Cell
 
 Phones
 

 Here, the State argues the officer’s search of photographs on appellant’s phone was within the scope of a permissible search incident to arrest, relying on a line of federal cases finding such a search is permissible because a cell phone is a “container” that may be searched pursuant to
 
 Chimel, Belton,
 
 and
 
 Robinson,
 
 and contains data that needs to be preserved right away.
 

 i. Cases finding cell phone searches are constitutionally valid
 

 The State relies primarily on
 
 Finley, All
 
 F.3d 250, on which the trial court relied in denying the motion to suppress. In
 
 Finley,
 
 the defendant was arrested following an under-cover controlled drug buy, and his cell phone was seized.
 
 Id.
 
 at 253-54. Officers searched the phone and discovered text messages that appeared to be related to narcotics use and trafficking, which the defendant confirmed during questioning.
 
 Id.
 
 at 254-55. The Fifth Circuit affirmed the trial court’s denial of the defendant’s motion to suppress.
 
 Id.
 
 The court found the defendant “had a reasonable expectation of privacy in the call records and text messages on the cell phone,” regardless of the fact the phone was issued to him by his employer.
 
 Id.
 
 at 259. However, the
 
 Finley
 
 court found pursuant to
 
 Robinson,
 
 incident to arrest, officers “without any additional justification, may look for evidence of the arres-tee’s crime on his person in order to preserve it for use at trial.”
 
 Id.
 
 at 259, 94 S.Ct. 467 (citing
 
 Robinson,
 
 414 U.S. at 233-34, 94 S.Ct. 467). Relying on
 
 Robinson
 
 and
 
 Belton,
 
 the
 
 Finley
 
 court further found the “permissible scope of a search incident to lawful arrest extends to containers found on the arrestee’s person.”
 
 Id.
 
 The court rejected Finley’s argument that police could not look in the phone because it was a closed container, finding Finley improperly relied on distinguishable case law that precluded the opening of closed containers where there was no exception to the warrant requirement.
 
 Id.
 

 Further, in
 
 United States v. Murphy,
 
 552 F.3d 405, 411 (4th Cir.2009), the Fourth Circuit found an officer’s search of a cell phone incident to arrest for drug-related crimes did not violate the Fourth Amendment. The
 
 Murphy
 
 court noted pursuant to
 
 Chimel,
 
 officers could search an arrestee and the area within the arres-tee’s immediate control incident to arrest.
 
 Id.
 
 at 410 (citing
 
 Chimel,
 
 395 U.S. at 763, 89 S.Ct. 2034). The court then found cell phones in particular could be searched incident to arrest due to the “volatile nature” of cell phone information and “manifest need ... to preserve evidence.”
 
 Id.
 
 at 411 (citation omitted). The defendant argued that officers should only be permitted to search phones with limited storage capacity, but not phones with larger storage capacities because there would be less danger of the phone deleting data.
 
 Id.
 
 The
 
 Murphy
 
 court rejected this argument, finding such a requirement would be “unworkable and unreasonable,” and further found “it is very likely that in the time it takes for officers to ascertain a cell phone’s particular storage capacity, the information stored therein could be permanently lost.”
 
 Id.
 

 The
 
 Murphy
 
 court relied on
 
 United States v. Young,
 
 278 Fed.Appx. 242, 245-46 (4th Cir.2008), in which officers arrested the defendant for drug-related crimes and discovered a cell phone on his person, and then searched the phone and copied
 
 *454
 
 down text messages found therein. The
 
 Young
 
 court found the “[p]rivacy rights in the phone are tempered by an arresting officer’s need to preserve evidence,” noting
 
 Robinson
 
 found the need for preservation of evidence was one of the primary reasons behind the warrant exception for searches incident to arrest.
 
 Id.
 
 at 245, 94 S.Ct. 467. The
 
 Young
 
 court found the officers’ search and seizure of the text messages was permissible because the officers “had no way of knowing whether the text messages would automatically delete themselves or be preserved.”
 
 Id.
 

 Murphy
 
 also relied on
 
 United States v. Ortiz,
 
 84 F.3d 977, 984 (7th Cir.1996), in which the Seventh Circuit affirmed the denial of a motion to suppress evidence retrieved from a pager incident to an arrest for drug-related crimes. In
 
 Ortiz,
 
 the Seventh Circuit found it was “imperative” that officers be permitted to retrieve numbers from electronic pagers incident to arrest to “prevent its destruction as evidence,” because incoming pages may destroy stored numbers on pagers that have limited memory, and the contents of some pagers can be destroyed by turning off the pager or pushing a button.
 
 Id.
 

 Similarly, in
 
 United States v. Deans,
 
 549 F.Supp.2d 1085, 1093-94 (D.Minn.2008), the court found a cell phone was a “container,” as contemplated by
 
 Belton,
 
 that could be searched incident to arrest. Thus, the court reasoned, “if a cell phone is lawfully seized, officers may also search any data electronically stored in the device.”
 
 Id.
 
 at 1094. The
 
 Deans
 
 court affirmed the denial of the defendant’s motion to suppress electronic data from his phone searched incident to his arrest for drug-related crimes.
 
 Id.
 

 Furthermore, in
 
 United States v. Santillan,
 
 571 F.Supp.2d 1093, 1102 (D.Ariz.2008), the court found officers’ search of the call log on the phone of a defendant arrested for drug-related crimes was a permissible search incident to arrest, relying on
 
 Finley,
 
 477 F.3d at 258-60. The court further found the warrantless search would also be justified under the exigent circumstances exception to the warrant requirement, reasoning “ ‘a cell phone has a limited memory to store numbers” and “subsequent incoming calls” could “effect[ ] the deletion or overwriting of the earlier stored numbers,’ ” even if the phone is turned off.
 
 Id.
 
 at 1103 (quoting
 
 U.S. v. Parada,
 
 289 F.Supp.2d 1291, 1303-04 (D.Kan.2003)).
 

 Additionally,
 
 Newhard v. Borders,
 
 649 F.Supp.2d 440, 448 (W.D.Va.2009), relied on by the State, is one of the only eases we found that addresses photographs found on cell phones. In
 
 Newhard,
 
 the district court affirmed the trial court’s dismissal of a civil action filed by an arrestee who argued police violated his civil rights by viewing photographs on his cell phone which was seized incident to his arrest.
 
 Id.
 
 The district court found the officers were entitled to qualified immunity because “[i]n the Internet age, the extent to which the Fourth Amendment provides protection for the contents of electronic communications (such as images stored in a cell phone) in a search incident to arrest or inventory search is an open question,” with no “clear rule from the United States Supreme Court.”
 
 Id.
 
 at 448. Although, it should be noted, the district court speculated the recent Supreme Court opinion in
 
 Gant,
 
 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485, limiting the search of vehicles, “could possibly be interpreted to stand for the proposition that police may not search a
 
 cell phone
 
 incident to an arrest without a warrant unless they have reason to believe the arrestee can access the phone and destroy relevant evidence or that the phone contains evidence of the specific offense that is the subject of the
 
 *455
 
 arrest.”
 
 Newhard,
 
 649 F.Supp.2d at 448 n. 6.
 

 Also notable is the California supreme. court’s recent decision in
 
 California v. Diaz,
 
 51 Cal.4th 84, 119 Cal.Rptr.3d 105, 244 P.3d 501 (2011), in which the court affirmed the denial of a motion to suppress a text message found on the defendant’s phone. In
 
 Diaz,
 
 a detective witnessed the defendant participate in a controlled drug buy, arrested him, and seized his cell phone from his person.
 
 Id.
 
 at 502. Upon questioning at the station, the defendant denied any knowledge of the drug buy.
 
 Id.
 
 The officer then, approximately 90 minutes after the arrest, “looked at the cell phone’s text message folder and discovered a message” that was incriminating, at which point the defendant confessed.
 
 Id.
 

 The
 
 Diaz
 
 court primarily addressed the defendant’s argument that the text message should be suppressed because the search of the phone was too remote in time and place to constitute a search incident to arrest.
 
 Id.
 
 at 503-07.
 
 Diaz
 
 concluded this determination hinged on whether the evidence searched was personal property immediately associated with the arrestee’s person, which may later be searched “ ‘even though a substantial period of time has elapsed.’ ”
 
 Id.
 
 at 504 (quoting
 
 U.S. v. Edwards,
 
 415 U.S. 800, 802-03, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974) (finding articles of clothing could be searched for evidence 10 hours after they were seized upon the defendant’s being booked)). Or, whether the property was akin to “ ‘luggage or other personal property
 
 not immediately associated with the person of the arrestee
 
 to their exclusive control,’ ” which may not be searched if “‘the search is remote in time and place to the arrest.’ ”
 
 Id.
 
 at 505 (quoting
 
 U.S. v. Chadwick,
 
 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (finding warrantless search of footlocker found in the trunk of a car 90 minutes after the arrest was invalid)).
 

 Diaz
 
 found the cell phone was personal property immediately associated with the defendant’s person; therefore, the search was valid despite the 90-minute lapse in time between the cell phone being seized and being searched.
 
 Id.
 
 at 506. In so finding,
 
 Diaz
 
 rejected the defendant’s argument that a cell phone should not be considered personal property immediately associated with the person, and instead should be analogized to a larger storage container like luggage, because cell phones held so much more information than what could traditionally be carried on one’s person.
 
 Id.
 
 at 506-07.
 

 In rejecting the defendant’s argument, the
 
 Diaz
 
 court found the delayed warrant-less search of property immediately associated with the person “is valid because of ‘reduced expectations of privacy caused by the arrest.’ ”
 
 Id.
 
 at 506 (quoting
 
 Chadwick,
 
 433 U.S. at 16, 97 S.Ct. 2476). Moreover, the
 
 Diaz
 
 court noted
 
 Robinson
 
 found “if a custodial arrest is lawful, then a ‘full’ search of the arrestee’s person ‘requires no additional justification.’ ”
 
 Id.
 
 (quoting
 
 Robinson,
 
 414 U.S. at 235, 94 S.Ct. 467).
 
 Diaz
 
 concluded, “[njothing in these decisions even hints that whether a warrant is necessary for a search of an item properly seized from an arrestee’s person incident to a lawful custodial arrest depends in any way on the character of the seized item.”
 
 Id.
 
 at 507.
 

 The
 
 Diaz
 
 court also analogized that in considering the proper scope of a warrant-less search of an automobile where the police have probable cause to believe it contains contraband, police may search any container or compartment that may contain the object of the search.
 
 Id.
 
 at 507 (citing
 
 United States v. Ross,
 
 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982);
 
 Belton,
 
 453 U.S. 454, 101 S.Ct.
 
 *456
 
 2860, 69 L.Ed.2d 768). Thus,
 
 Diaz
 
 concluded, “there is no legal basis for holding that the scope of a permissible warrantless search of an arrestee’s person, including items immediately associated with the ar-restee’s person, depends on the nature or character of those items.”
 
 Id.
 

 Diaz
 
 also rejected the dissent’s argument that cell phones should not be searched incident to arrest because they are more than mere “containers” as contemplated by
 
 Robinson. Id.
 
 at 510.
 
 Diaz
 
 found, “application of the rule ... turns not on whether the item in question constitutes a ‘container,’ but on whether it is ‘property,’ ” which is defined as a “belonging” or “effect” of the arrestee.
 
 Id.
 

 Diaz
 
 is distinguishable from the case at hand because it turned on the determination of an issue not raised here — whether the search was too remote in time to be considered incident to arrest. The analysis in
 
 Diaz
 
 is relevant here, however, because
 
 Diaz
 
 correctly notes courts have not traditionally limited the scope of a search incident to arrest based on the nature of the property found on the arrestee.
 

 A Georgia appellate court also recently upheld the search of a cell phone found in a vehicle incident to arrest.
 
 Hawkins v. State,
 
 307 Ga.App. 253, 704 S.E.2d 886 (2010). In
 
 Hawkins,
 
 an officer set up a drug buy through text messaging, and when he arrived at the prearranged location, he discovered the buyer, watched her entering data into her cell phone, and arrested her while she was sitting in her car.
 
 Id.
 
 at 888-89. The officer subsequently searched the car and found her cell phone in her purse, and searched the text messages on her phone.
 
 Id.
 

 Hawkins
 
 found the search of the arrestee’s car incident to arrest was valid pursuant to
 
 Gant,
 
 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485, because it was reasonable for the officer to believe the car would contain evidence of the crime — specifically, the cell phone with which she set up the drug buy.
 
 Id.
 
 at 892. The court noted, “[although
 
 Gant
 
 does not define the scope of such a search with precision, we know that it must be limited to a search for evidence of the crime of arrest.”
 
 Id.
 
 at 889 (citing
 
 Gant,
 
 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485;
 
 U.S. v. Ross,
 
 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572). The
 
 Hawkins
 
 court further noted
 
 Gant
 
 found such a search is “more limited in scope than a search based on probable cause ... which permits a search of any place or thing in the vehicle that might contain any evidence of [any] criminal activity.”
 
 Id.
 
 (citing
 
 Gant,
 
 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485;
 
 Ross,
 
 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572).
 
 Hawkins
 
 further noted that in conducting a warrantless search of an automobile based on probable cause, the scope of the search “ ‘is not defined by the nature of the container in which the contraband is secreted. Rather it is defined by the object of the search and the places where there is probable cause to be found.’ ”
 
 Id.
 
 at 890 (quoting
 
 Ross,
 
 456 U.S. at 824, 102 S.Ct. 2157). The court in
 
 Ross
 
 explained by example, “[j]ust as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase.” Ro
 
 ss
 
 456 U.S. at 824, 102 S.Ct. 2157.
 

 Hawkins
 
 determined cell phones were containers that may be searched incident to arrest. 704 S.E.2d at 891. However,
 
 Hawkins
 
 expressed concern that cell phones were distinguishable from ordinary containers because they “often will contain the most sensitive kinds of personal information, in which individuals
 
 *457
 
 may reasonably have a substantial expectation of privacy and for which the law offers heightened protection.”
 
 Id.
 
 Therefore, applying
 
 Gant
 
 and
 
 Ross,
 
 the court concluded, “we think courts generally should ... treat such a device like a container that stores thousands of individuar containers in the form of discrete files.”
 
 Id.
 
 (citation omitted). “Just because an officer has the authority to make a search of the data stored on a cell phone (that is, just because he has reason to ‘open’ the ‘container’) does not mean that he has the authority to sift through
 
 all
 
 of the data stored on the phone (that is, to open and view all of the sub-containers of data stored therein).”
 
 Id.
 
 “Instead, his search must be limited as much as is reasonably practicable by the object of the search.”
 
 Id.
 
 at 892.
 

 Hawkins
 
 is not directly applicable to the case at hand because
 
 Hawkins
 
 analyzed the cell phone search based on the permissible search of an automobile, which is more limited than the search of one’s person. Because the cell phone in
 
 Hawkins
 
 was in the car, it seems the
 
 Hawkins
 
 court was correct in applying
 
 Gant
 
 to determine whether the officer had reason to believe the car contained evidence, i.e., the cell phone. However, it seems
 
 Hawkins
 
 went one step further and essentially analogized a cell phone to a car, finding officers may only look into specific areas or “containers” within the cell phone in the same way officers would be able to open various containers in a car pursuant to a probable cause search.
 

 ii. Cases finding cell phone searches invalid
 

 In
 
 United States v. Quintana,
 
 594 F.Supp.2d 1291 (M.D.Fla.2009), the federal district court found a cell phone may not be searched incident to arrest unless officers have reason to believe it contains evidence related to the crime. In
 
 Quintana,
 
 the defendant was pulled over for speeding and arrested for driving with a suspended license.
 
 Id.
 
 at 1294-95. The arresting officer then, without the defendant’s permission, “began looking through information in [his] cell phone, including a digital photo album, hoping to find evidence related to the odor of the marijuana” he detected coming from the car.
 
 Id.
 
 at 1295-96. The officer found “photos of an intimate nature involving a woman as well as a photo of a marijuana plant in what he characterized as a marijuana ‘grow house.’ ”
 
 Id.
 
 at 1296. Based on this photograph, the officers ultimately found the grow house.
 
 Id.
 

 The
 
 Quintana
 
 court recognized that pursuant to
 
 Chimel,
 
 officers may conduct searches incident to arrest for the safety of law enforcement officers and to prevent the destruction or concealment of evidence; although, pursuant to
 
 Robinson,
 
 “authority to conduct such searches
 
 does not turn on the probability that weapons or evidence will be discovered.” Id.
 
 at 1299 (emphasis added) (citing
 
 Chimel,
 
 395 U.S. at 762-63, 89 S.Ct. 2034;
 
 Robinson,
 
 414 U.S. at 235, 94 S.Ct. 467). The
 
 Quintana
 
 court also recognized federal precedent permitted the search of cell phones incident to arrest, but found “the defendants in these cases were arrested for drug-related activity when their electronic devices were searched.”
 
 Id.
 
 “The courts recognized that the devices may have been used to communicate with others participating in, e.g., drug-trafficking. Consequently, there was a
 
 reasonable probability
 
 that information stored on the device was ‘evidence of
 
 the arrestee’s crime.’ ” Id.
 
 (quoting
 
 Finley,
 
 477 F.3d at 260) (emphasis added).
 

 The
 
 Quintana
 
 court distinguished:
 

 Whether a cell phone may be searched incident to an arrest to prevent the destruction or concealment of
 
 evi
 
 
 *458
 

 dence of another crime
 
 is a different issue. In
 
 Knowles v. Iowa,
 
 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998), the Supreme Court ... suggests that a search incident to arrest to preserve evidence is permissible only to secure evidence of the crime of the arrest,
 
 not evidence of an unrelated crime.
 

 Id.
 
 at 1299-1300 (emphasis added). The
 
 Quintana
 
 court then held:
 

 Where a defendant is arrested for drug-related activity, police may be justified in searching the contents of a cell phone for evidence related to the crime of arrest,
 
 even if the presence of such evidence is improbable.
 
 In this case, however, Defendant was arrested for driving with a suspended license. The search of the contents of Defendant’s cell phone had nothing to do with officer safety or the preservation of evidence
 
 related to the crime of arrest.
 
 This type of search is not justified by the twin rationales of
 
 Chimel
 
 and pushes the seareh-incident-to-arrest doctrine beyond its limits.
 

 Id.
 
 at 1300 (emphasis added).
 

 Appellant argues that applying the rationale of
 
 Quintana
 
 to the case at hand, appellant was not arrested for a drug-related offense, and the officers here had no reason to believe his cell phone would contain evidence of the robbery for which he was arrested; therefore, the search violated the Fourth Amendment.
 

 However, appellant’s reading of
 
 Quinta-na
 
 seems too narrow. Granted, appellant correctly notes that
 
 Quintana
 
 found federal precedent allowed the search of cell phones incident to drug-related arrests where there “was a
 
 reasonable probability
 
 that information stored on the device was ‘evidence of
 
 the amstee’s crime.’ ” Id.
 
 at 1299 (quoting
 
 Finley,
 
 477 F.3d at 260). However,
 
 Quintana
 
 recognized officers may search for evidence related to the crime of arrest “even if the presence of such evidence is improbable.”
 
 Id.
 
 at 1300. It seems
 
 Quintana
 
 merely distinguished that pursuant to
 
 Knowles,
 
 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492, “search incident to arrest to preserve evidence is permissible only to secure evidence of the crime of the arrest,
 
 not evidence of an unrelated crime.” Id.
 
 Here, officers were not searching for evidence of an unrelated crime. Officers were searching for evidence of the robbery for which appellant was arrested. Therefore, the rationale of
 
 Quintana
 
 is not directly applicable here.
 

 Appellant further argues this court should decline to follow the federal precedent permitting the search of cell phones because these cases hinged on the courts analogizing cell phones to “containers.” Appellant concedes that pursuant to
 
 Bel-ton
 
 and
 
 Robinson,
 
 containers found on an arrestee’s person may be searched. However, appellant argues cell phones are not mere “containers.” Appellant relies on a recent case in which the supreme court of Ohio rejected the reasoning of the line of federal cases finding a cell phone is a “container” subject to search upon arrest, reasoning:
 
 *459
 

 State v. Smith,
 
 124 Ohio St.3d 163, 920 N.E.2d 949, 954 (2009). The court cited the great privacy interest in the personal data on cell phones and found a cell phone may not be searched under the incident-to-arrest exception to the warrant requirement.
 
 Id.
 
 The court noted there is a separate exception to the warrant requirement that allows search and seizure of evidence where “exigent circumstances” exist.
 
 Id.
 
 at 955-56. However, the court rejected the State’s argument that because cell phones may automatically delete data like call logs, exigent circumstances permit the search of a cell phone, finding the State failed to demonstrate it could not obtain call information from cell phone service providers.
 
 Id.
 

 
 *458
 
 Each of these cases, however, fails to consider the Supreme Court’s definition of “container” in
 
 Belton,
 
 which implies that the container must actually have a physical object within it. Additionally, the pagers and computer memo books of the early and mid 1990s bear little resemblance to the cell phones of today. Even the more basic models of modern cell phones are capable of storing a wealth of digitized information wholly unlike any physical object found within a closed container. We thus hold that a cell phone is not a closed container for purposes of a Fourth Amendment analysis.
 

 
 *459
 

 Smith
 
 is clearly directly on point as is its reasoning that a cell phone is not a “container” pursuant to
 
 Belton.
 
 However,
 
 Smith’s
 
 finding that a cell phone may never be searched under the search-ineident-to-arrest warrant requirement appears to contravene existing United States Supreme Court case law, which has never made any type of evidence found on or within the reach of an arrestee entirely off limits during such a search, not even a car.
 

 c.
 
 Analysis
 

 Article I, section 12 of the Florida Constitution provides the right against unreasonable search and seizure as granted under the Florida Constitution “shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court.” Therefore, this court is bound by United States Supreme Court precedent. We find pursuant to
 
 Robinson,
 
 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427, the search of appellant’s cell phone incident to his arrest was not a violation of the Fourth Amendment.
 

 We recognize that as discussed above, many of the federal and state courts that have addressed this issue have found whether or not a cell phone may be searched incident to arrest is contingent upon whether or not a cell phone is a “container” as contemplated by
 
 Robinson
 
 and
 
 Belton.
 
 However, neither
 
 Robinson
 
 nor
 
 Belton
 
 requires an item be a “container” in order to be searchable upon arrest. Initially in
 
 Chimel,
 
 the United States Supreme Court broadly found it is “reasonable for the arresting officer to search for and seize any evidence on the arrestee’s person,” as well as the area within the “immediate control” of the arrestee, in order “to prevent its concealment or destruction.”
 
 Chimel,
 
 395 U.S. at 763, 89 S.Ct. 2034. Following
 
 Chimel, Robinson
 
 reasoned, “[hjaving in the course of a lawful search come upon the crumpled package of cigarettes, [the officer] was entitled to inspect it; and when his inspection revealed the heroin capsules, he was entitled to seize them.”
 
 Robinson,
 
 414 U.S. at 236, 94 S.Ct. 467. Therefore,
 
 Robinson
 
 did not find the search of an item found on an arrestee was contingent upon that item being a “container,” nor did the opinion even use the word “container.” Instead, the Court simply reasoned that once the officer lawfully came across an item, he “was entitled to inspect it.”
 
 Id.
 

 Belton
 
 extended this line of cases to the search of automobiles in which the arres-tee was an occupant, which is not directly applicable to the case at hand. 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768. The
 
 Belton
 
 court reasoned if pursuant to
 
 Chimel,
 
 an officer was permitted to search an arrestee’s person and “ ‘the area within the immediate control of the arrestee,’ ” it logically followed that officers should also be allowed to search “the passenger compartment” of a vehicle because “articles inside the relatively narrow compass of the passenger compartment of an automobile are ... within ‘the area into which an arrestee
 
 *460
 
 might reach.’ ”
 
 Id.
 
 at 460 (quoting
 
 Chimel,
 
 395 U.S. at 763, 89 S.Ct. 2034). The Court similarly reasoned, “[i]t follows from this conclusion that the police may examine the contents of any container found within the passenger compartment, for if the passenger compartment is within the reach of the arrestee, so also will containers in it be within his reach.”
 
 Belton,
 
 453 U.S. at 460-61, 101 S.Ct. 2860.
 

 While
 
 Chimel, Robinson
 
 and
 
 Bel-ton
 
 permitted the search and inspection of items within the ai'restee’s reach, including containers, none of these cases required an item to be a “container,” as opposed to some other type of item, in order to be searched upon arrest. Thus, whether or not a cell phone is properly characterized as a traditional “container” is irrelevant to whether or not it is searchable upon arrest. The Supreme Court has clearly and repeatedly found that anything found on an arrestee or within an arrestee’s immediate control may be searched and inspected upon arrest. There is nothing in the language of any of these cases that would permit this court to find an exception for cell phones. Therefore, we reject the reasoning of the Ohio supreme court which found cell phones were not searchable incident to arrest because they were not traditional “containers.”
 
 Smith,
 
 124 Ohio St.3d 163, 920 N.E.2d 949.
 

 Furthermore, we recognize appellant correctly argues courts have found whether or not an officer had a reason to believe the cell phone contained evidence of the crime of arrest was relevant in determining the permissibility of the search, particularly with regards to drug-related arrests. However, neither
 
 Robinson
 
 nor
 
 Belton
 
 requires such a belief.
 
 Robinson
 
 found the opposite, concluding “[t]he authority to search the person incident to a lawful custodial arrest ... does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect.” 414 U.S. at 235, 94 S.Ct. 467.
 
 Robinson
 
 reasoned, “[a] custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.”
 
 Id.
 
 Therefore, “a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a ‘reasonable’ search under that Amendment.”
 
 Id.
 

 Subsequently, the Supreme Court summarized its holding in
 
 Robinson,
 
 explaining “[i]n
 
 Robinson,
 
 we held that the authority to conduct a full field search as incident to an arrest was a ‘bright-line rule,’ which was based on the concern for officer safety and destruction or loss of evidence, but which did not depend in every case upon the existence of either concern.”
 
 Knowles,
 
 525 U.S. at 118, 119 S.Ct. 484 (finding in order to fall under the incident-to-arrest warrant exception, it is not enough that an officer would have had probable cause to make an arrest if the officer so chose; the officer must actually make an arrest). Therefore, clearly the Supreme Court has established a bright-line rule permitting a search incident to arrest, regardless of whether an officer had reason to believe evidence would be found. Thus, whether or not the officer had reason to believe appellant’s cell phone contained evidence of the crime is irrelevant.
 

 While we feel we are bound by the Supreme Court precedent, we recognize appellant’s concern that cell phones contain a vast amount of personal information. However, courts have found the broad language in
 
 Robinson
 
 permits searches incident to arrest of wallets, purses, date books, and other similar items that contain
 
 *461
 
 the same types of personal information stored on a cell phone.
 
 See, e.g., Curd v. City Court of Judsonia, Arkansas,
 
 141 F.3d 839, 844 (8th Cir.1998) (finding the search of a purse was valid, rejecting the arrestee’s argument that the search was too remote in time and place to be considered incident to arrest);
 
 U.S. v. Holzman,
 
 871 F.2d 1496, 1504-05 (9th Cir.1989) (finding initial examination of address book and subsequent, more thorough search were valid incident to arrest, regardless of the fact the second search occurred at the police station after the arrest),
 
 overruled on, other grounds, Horton v. California,
 
 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990));
 
 U.S. v. Rodriguez,
 
 995 F.2d 776, 778 (7th Cir.1993) (finding “the search of Rodriguez’ wallet and the photocopying of the contents of the address book were permissible as a search incident to arrest,” rejecting the arrestee’s argument that the search was not incident to arrest because the book was copied at the station house and not the scene of the arrest);
 
 U.S. v. McEachern,
 
 675 F.2d 618, 622 (4th Cir.1982) (finding “[t]he search of [an arres-tee’s] wallet was incident to arrest and thus permissible”);
 
 U.S. v. Vaneenwrjk,
 
 206 F.Supp.2d 423, 426 (W.D.N.Y.2002) (finding “an object such as a day planner, address book or the like is subject to seizure as part of such a search incident to arrest,” and concluding the search of an arrestee’s day planner seized from his vehicle incident to arrest was valid).
 

 Appellant conceded during oral arguments that if the personal information stored on a cell phone were carried by an arrestee in paper form on his or her person, the papers would be searchable incident to arrest. Thus, essentially appellant seeks a heightened level of protection for cell phones based on the vast storage capacity of a cell phone to hold personal data and not simply the personal nature of the data. We find nothing in the language of
 
 Robinson
 
 or its progeny that would permit this court to limit a search incident to arrest in this manner.
 

 However, we express great concern in permitting the officer to search appellant’s cell phone here where there was no indication the officer had reason to believe the cell phone contained evidence. The bright-line rule established by
 
 Robinson
 
 may have been prudent at the time, given the finite amount of personal information an arrestee could carry on his or her person or within his or her reach. However, the
 
 Robinson
 
 court could not have contemplated the nearly infinite wealth of personal information cell phones and other similar electronic devices can hold. Modern cell phones can contain as much memory as a personal computer and could conceivably contain the entirety of one’s personal photograph collection, home videos, music library, and reading library, as well as calendars, medical information, banking records, instant messaging, text messages, voicemail, call logs, and GPS history. Cell phones are also capable of accessing the internet and are, therefore, capable of accessing information beyond what is stored on the phone’s physical memory. For example, cell phones may also contain web browsing history, emails from work and personal accounts, and applications for accessing Facebook and other social networking sites. Essentially, cell phones can make the entirety of one’s personal life available for perusing by an officer every time someone is arrested for any offense. It seems this result could not have been contemplated or intended by the
 
 Robinson
 
 court.
 

 We would also note that the rationale related to text messages and phone call logs concerning automatic deletion is not applicable here because there was no argument or evidence presented that photographs are subject to automatic deletion.
 

 
 *462
 
 Furthermore, recently in
 
 Gant,
 
 the Supreme Court reaffirmed that the original purpose of the incident-to-arrest warrant exception was to protect officer safety and preserve evidence. 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485.
 
 Gant
 
 is not directly applicable here because its holding is limited to the search of automobiles, but the court’s rationale is very informative here. The court held, “[a]lthough it does not follow from
 
 Chimel,
 
 we also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is ‘reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.’ ”
 
 Id.
 
 at 1719. In so finding, the court reasoned “[a] rule that gives police the power to conduct such a search whenever an individual is caught committing a traffic offense, when there is no basis for believing evidence of the offense might be found in the vehicle, creates a serious and recurring threat to the privacy of countless individuals.”
 
 Id.
 
 at 1720. “Indeed, the character of that threat implicates the central concern underlying the Fourth Amendment-the concern about giving police officers unbridled discretion to rummage at will among a person’s private effects.”
 
 Id.
 

 The
 
 Gant
 
 court’s concerns are applicable here. We are equally concerned that giving officers unbridled discretion to rummage through at will the entire contents of one’s cell phone, even where there is no basis for believing evidence of the crime of arrest will be found on the phone, creates a serious and recurring threat to the privacy of countless individuals. Were we free to do so, we would find, given the advancement of technology with regards to cell phones and other similar portable electronic devices, officers may only search cell phones incident to arrest if it is reasonable to believe evidence relevant to the crime of arrest might be found on the phone. Here, there was no evidence the officer had such a reasonable belief.
 

 In light of our concerns, we certify the following question to be one of great public importance:
 

 DOES THE HOLDING IN
 
 UNITED STATES V. ROBINSON,
 
 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), ALLOW A POLICE OFFICER TO SEARCH THROUGH PHOTOGRAPHS CONTAINED WITHIN A CELL PHONE WHICH IS ON AN ARRESTEE’S PERSON AT THE TIME OF A VALID ARREST, NOTWITHSTANDING THAT THERE IS NO REASONABLE BELIEF THAT THE CELL PHONE CONTAINS EVIDENCE OF ANY CRIME?
 

 The decision of the trial court is AFFIRMED.
 

 WEBSTER and ROBERTS, JJ., concur.