VAN NORTWICK, J.
 

 Jeffrey Fawdry appeals a judgment of conviction for five counts of possession of photographs which depicted sexual performance by a child in violation of section 827.071(5), Florida Statutes (2009), asserts ing that the trial court erred in denying his motion to suppress evidence seized from his cellular telephone. The photographs in question were stored in Fawdry’s cellular telephone and were discovered by police when his telephone was searched upon his arrest for other charges. Fawdry moved to suppress the photographs. After an evidentiary hearing, the trial court denied the motion to suppress. Fawdry thereafter entered a no contest plea, reserving the right to appeal the denial of his motion to suppress. Because we find that the search of Fawdry’s phone falls within the scope of the search incident to arrest exception to the Fourth Amendment’s warrant requirement, we affirm.
 

 Evidence introduced at the suppression hearing revealed that on June 19, 2009, Jacksonville Sherriffs Officer Fontenot went to Fawdry’s home to serve an extra-jurisdictional arrest warrant for several counts of sexual battery on a child. At the home, Fontenot encountered Fawdry and several members of Fawdry’s family. After placing Fawdry under arrest, Fontenot proceeded to search Fawdry’s person. During the search, Fontenot discovered a wallet and a cell phone. When Fontenot came across the cell phone, he noticed that Fawdry became unusually nervous, according to the officer’s testimony. After Fon-tenot removed the cell phone from Faw-dry’s pocket, Fawdry repeatedly insisted that the phone be given to his sister. Based on prior instruction from his supervisors regarding the existence of firearms disguised as cell phones, Fontenot flipped open the cell phone to confirm that it was not a weapon. Upon opening the phone, Fontenot discovered that the so-called wallpaper behind the phone’s main menu was comprised of a photograph of an erotically-posed, prepubescent female. Recalling that Fawdry was being arrested on charges of sexual battery of a child, Fonte-not believed that further inquiry was warranted and proceeded to search the media files on the phone. This search revealed images of child pornography. Based upon these images, Fawdry was later charged by information with several counts of possession of a photograph which depicted sexual performance by a child. Fawdry then moved to suppress the fruits of the search of his cell phone.
 

 
 *628
 
 In denying the motion to suppress, the trial court held that, given Fawdry’s reaction to the seizure of his cell phone, it was reasonable for Fontenot to open the phone. The trial court further held that, because of the nature of the image in the cell phone wallpaper and in light of the sexual offenses for which Fawdry was being arrested, it was reasonable for the officer to search through the data files on the phone.
 

 A trial court’s ruling on a motion to suppress is reviewed with “great deference.” The trial court’s ruling is presumed to be correct, and the reviewing court interprets “the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court’s ruling.”
 
 Brye v. State,
 
 927 So.2d 78, 80 (Fla. 1st DCA 2006) (quoting
 
 Murray v. State,
 
 692 So.2d 157, 159 (Fla.1997);
 
 Connor v. State,
 
 803 So.2d 598, 605 (Fla.2001)). A trial court’s ruling on a motion to suppress presents “a mixed question of law and fact.”
 
 Cooks v. State,
 
 28 So.3d 147, 149 (Fla. 1st DCA 2010) (citing
 
 Panter v. State, 8
 
 So.3d 1262, 1265 (Fla. 1st DCA 2009)). As such, it is reviewed on appeal “applying a two-step approach.”
 
 Brye,
 
 927 So.2d at 80-81. “Deference is to be shown to the trial court on questions of historical fact, but
 
 de novo
 
 review of the application of a constitutional standard to the facts in a particular case is proper.”
 
 Id.
 
 at 81 (citing
 
 United States v. Bajakajian,
 
 524 U.S. 321, 336 n. 10, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998);
 
 Ornelas v. United States,
 
 517 U.S. 690, 696-98, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996);
 
 Connor v. State,
 
 803 So.2d 598, 605 (Fla.2001)).
 

 In this case, Fawdry challenges the war-rantless search of his cell phone incident to his arrest pursuant to a lawful arrest warrant. The issue presented is whether the warrantless search of a cell phone exceeds the permissible scope of searches allowed under the search incident to arrest exception of the Fourth Amendment’s warrant requirement.
 

 The permissible scope of a search incident to a lawful custodial arrest is limited to: 1) a search of the suspect’s person; and 2) a search of the area within the suspect’s immediate control.
 
 See Chimel v. California,
 
 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). Although the authority to conduct this search is justified by the need to protect officer safety and prevent the destruction of evidence of the suspect’s crime, the lawfulness of a warrantless search incident to a lawful arrest “does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect.”
 
 United States v. Robinson,
 
 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973). Accordingly, a search of a suspect incident to a lawful arrest is a “ ‘reasonable’ search” under the Fourth Amendment, requiring “no additional justification.”
 
 Id.
 
 Further a lawful arrest allows an arresting officer to search personal effects, including open and closed containers,
 
 [1]
 
 carried by the suspect.
 
 [2]
 

 Savoie v.
 
 
 *629
 

 State,
 
 422 So.2d 308, 313-14 (Fla.1982) (citing
 
 United States v. Brown,
 
 671 F.2d 585 (D.C.Cir.1982)). Such a search is permitted, not because a suspect has no privacy interests in his personal effects, but because a lawful custodial arrest justifies the infringement of any privacy interest a suspect may have in such effects.
 
 See New York v. Belton,
 
 453 U.S. 454, 461, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981).
 

 The unique properties of modern cellular telephones, including their multi-func-tional capabilities and immense storage capacities, have led some courts to conclude that a search of a cell phone is more intrusive than the search of the contents of physical containers and that an individual has a heightened expectation of privacy as a result.
 
 See, e.g., State v. Smith,
 
 124 Ohio St.3d 163, 920 N.E.2d 949, 954-55 (2009). Other courts have come to a different conclusion, analogizing a cell phone to a closed container and permitting its search pursuant to the rule set forth in
 
 Belton. See, e.g., United States v. Finley,
 
 477 F.3d 250, 259-60 (5th Cir.2007).
 

 The State urges us to adopt the reasoning of
 
 Finley.
 
 In
 
 Finley,
 
 the defendant was arrested on drug charges stemming from his involvement in a controlled purchase of narcotics. Incident to this arrest, Finley was searched and his cell phone was seized from his pocket. After he was taken into custody, the arresting officer transported Finley to the home of an accomplice where other officers were conducting a search pursuant to a warrant. Outside the home, Finley was questioned, and his cell phone was searched.
 
 Id.
 
 at 253-54.
 

 On appeal before the Fifth Circuit, Finley argued that the evidence recovered during the search of his cell phone should have been suppressed.
 
 Id.
 
 at 258. In affirming the denial of Finley’s motion to suppress, the Fifth Circuit characterized a cell phone as a closed container.
 
 Id.
 
 at 260. Accordingly, like a pager or other container, the court concluded, on the authority of
 
 Robinson,
 
 414 U.S. at 235, 94 S.Ct. 467, that a cell phone could be searched incident to arrest.
 
 [3]
 

 Finley,
 
 477 F.3d at 260.
 

 Fawdry urges us to reject the conclusion of the
 
 Finley
 
 court and instead adopt the Ohio Supreme Court’s reasoning in
 
 Smith,
 
 which rejected the container analogy.
 
 See
 
 920 N.E.2d at 953-54. While the Ohio court acknowledged federal court precedent “likenfing] electronic devices to closed containers!,]” it read the
 
 Belton
 
 container rule as implicitly requiring that a container have the capacity to store another physical object within it.
 
 Smith,
 
 920 N.E.2d at 954. Further, the court distinguished modern cell phones from pagers and computer memo books, objects previously deemed indistinguishable from closed containers by federal courts, based upon the type of information capable of being stored therein.
 
 Id.
 
 The court concluded that, because of a modern cell phone’s capacity to store “a wealth of digitized information wholly unlike any physical object found within a closed container!,]” it could not be consid
 
 *630
 
 ered “a closed container for the purpose of a Fourth Amendment analysis.”
 
 Id.
 

 We are unpersuaded by
 
 Smith.
 
 Although it may be true that a digital file itself is “wholly unlike any physical object found within a closed container,” the information found within it is likely no different than information found within a printed physical copy of a digital file. Indeed, before the innovations made available in current cell phone technology, the information contained within digital files would have been contained in tangible copies and carried in closed containers. Digital files and programs on cell phones have merely served as replacements for personal effects like address books, calendar books, photo albums, and file folders previously carried in a tangible form. Viewed in this light, the cell phone merely acts as a case (i.e. closed container) containing these personal effects. When in tangible form, the aforementioned personal effects could clearly be searched incident to arrest if found in a case carried on the suspect’s person or in a vehicle which the suspect occupied.
 
 See Savoie,
 
 422 So.2d at 313-14;
 
 see also Robinson,
 
 414 U.S. at 235-36. Accordingly, a search of a digital version of these personal effects would be similarly permissible. After all, it is the information itself in which a person’s privacy interests lie.
 
 See Finley,
 
 477 F.3d at 259 (explaining that although the defendant’s employer owned the telephone, the defendant still “had a reasonable expectation of privacy in the call records and text messages on the cell phone”). Accordingly, a distinction based upon the manner in which that information is stored is unwarranted.
 

 Fawdry further argues that, even if we analogize the cell phone to a container, the search in this case was still unlawful because, under
 
 Arizona v. Gant,
 
 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), searches of containers under
 
 Belton
 
 are limited to searches for evidence of the crime of arrest. We believe that this argument is misplaced. The
 
 Gant
 
 court did not recede from
 
 Belton,
 
 but rather corrected what it deemed to be an overly broad reading of that opinion by other courts.
 
 See Gant,
 
 129 S.Ct. at 1718-19. Thus, the
 
 Gant
 
 court held that
 
 Belton
 
 does not justify the search of a vehicle where a suspect is secured and not able to reach the area of the car being searched.
 
 Id.
 
 at 1719. This limitation is not relevant in the case before us because a vehicle search did not occur. Here, Fawdry was arrested at his home, his cell phone was found on his person, and he was searched immediately following his lawful arrest.
 

 We find that the instant ease is analogous to our recent decision in
 
 Smallwood v. State,
 
 61 So.3d 448 (Fla. 1st DCA 2011). We agree with the analysis in
 
 Smallwood
 
 and find that
 
 Robinson
 
 is dis-positive here. As the
 
 Smallwood
 
 panel notes,
 
 Robinson
 
 permits an officer to inspect any item found on the person of a suspect.
 
 See Robinson,
 
 414 U.S. at 236, 94 S.Ct. 467. A court is not permitted to second guess the decision to inspect such items by weighing the “probability in a particular arrest situation that weapons or evidence would in fact be found[.]”
 
 Id.
 
 at 235, 94 S.Ct. 467. A search incident to a lawful arrest is “reasonable” per se under the Fourth Amendment.
 
 Id.
 
 The
 
 Gant
 
 court did nothing to alter this rule in the context of the instant case. Accordingly, the search of Fawdry’s cell phone incident to his arrest was not a violation of the Fourth Amendment.
 

 Because Fawdry’s motion to suppress evidence seized from his cell phone was without merit, we AFFIRM. We certify a question of great public importance similar to the question certified in
 
 Smallwood:
 

 DOES THE HOLDING IN
 
 U.S. v. ROBINSON,
 
 414 U.S. 218, 94 S.Ct. 467,
 
 *631
 
 38 L.Ed.2d 427 (1973) ALLOW A POLICE OFFICER TO SEARCH THROUGH PHOTOGRAPHS CONTAINED WITHIN A CELL PHONE WHICH IS ON AN ARRESTEE’S PERSON AT THE TIME OF A VALID ARREST?
 

 LEWIS, and ROBERTS, JJ., concur.
 

 [1]
 

 . A container includes "any object capable of holding another object.”
 
 New York
 
 v.
 
 Belton,
 
 453 U.S. 454, 460 n. 4, 101 S.Ct. 2860, 2864 n. 4, 69 L.Ed.2d 768 (1981).
 

 [2]
 

 . This container rule was first explicitly pronounced in
 
 New York v. Belton,
 
 wherein the United States Supreme Court held that police may, contemporaneously to a lawful custodial arrest' of an occupant of an automobile, search the entire passenger compartment as well as any container found therein whether open or closed. 453 U.S. at 460-61, 101 S.Ct. 2860. The Court’s opinion in
 
 Belton,
 
 suggests that permitting a container search in the automobile context is merely an extension of the rule set forth in
 
 Robinson,
 
 which permitted the inspection of the contents of a
 
 *629
 
 crumpled cigarette package found on a suspect’s person incident to arrest.
 
 See id.
 
 at 460-61, 101 S.Ct. 2860;
 
 Robinson,
 
 414 U.S. at 236, 94 S.Ct. 467. Nonetheless, when the Florida Supreme Court upheld the search of a container found on the suspect’s person in
 
 Savoie v. State,
 
 the court viewed its holding as an extension of
 
 Belton.
 
 422 So.2d 308, 313— 14 (Fla.1982).
 

 [3]
 

 . Although the cell phone search in
 
 Finley
 
 occurred after the defendant was transported to an accomplice’s home, the court still deemed the search to be "substantially contemporaneous” to arrest so as to qualify as a search incident to arrest.
 
 Id.
 
 at 260 n. 7.